**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**R.S., individually and on behalf of
D.S., a child with a disability, and
C.S., individually and on behalf of
D.S., a child with a disability,**

       Plaintiffs,

**v.**                                  **CIVIL ACTION NO.: 3:18-CV-80
(GROH)**

**MORGAN COUNTY
BOARD OF EDUCATION,**

       Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING
IN PART DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the Plaintiffs' Motion for Summary Judgment, Additional

Evidence and Attorney Fees [ECF No. 13], filed on March 6, 2019, and the Defendant's

Motion for Summary Judgment and Response in Opposition to Plaintiffs' Motion for

Summary Judgment [ECF No. 15]. The Plaintiffs filed a reply [ECF No. 17] on April 22,

2019. The Defendant filed a surreply on May 3, 2019. ECF No. 20. Accordingly, the

matter has been fully briefed and is now ripe for review. For the following reasons, the

Plaintiffs' Motion [ECF No. 13] is **GRANTED IN PART** and the Defendant's Motion [ECF

No. 15] is **GRANTED IN PART**.

## I. Background

On May 18, 2018, Plaintiffs R.S. and C.S. on behalf of D.S. ("Plaintiffs") filed the

complaint in this action under the Individuals with Disabilities Education Act ("IDEA")

and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), partially appealing Due Process Hearing Decision D18-007, dated February 19, 2018. ECF No. 1 at 1. Specifically, the Plaintiffs allege that the Impartial Due Process Hearing Officer ("IHO") erred when she found that Defendant Morgan County Board of Education ("Defendant") did not violate the IDEA and Section 504 by failing to provide a one-to-one aide and specialized instruction to address his reading disability. ECF No. 1 at 8-10. The relevant facts are as follows.

Plaintiff D.S. is a child with a disability who attends an elementary school in Morgan County, West Virginia. Since birth, D.S. has suffered from a life-threatening disorder, Medium Chain Acyl CoA Dehydrogenase Deficiency ("MCADD"), which prevents his body from converting fats into energy. As a result, D.S.'s blood sugar must be checked on a regular schedule and when it is suspected that his blood sugar is low. If D.S.'s blood sugar falls too low, he must be transported to the hospital by ambulance, and if there is no timely treatment, D.S. could die. D.S. has also been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional/Defiant and Disruptive Behaviors ("ODD").

For D.S., MCADD manifests itself in several ways in the educational environment. For example, when D.S.'s blood sugar is low, he exhibits observable symptoms ranging from disassociation to hyperactivity. In kindergarten, D.S. became dehydrated during physical education and had to be hospitalized for a week. To ensure regular monitoring of D.S.'s blood sugar levels, D.S. spends a minimum of forty minutes per day in the nurse's office. Because of his medical condition, the school has been unable to provide transportation to and from school, and this transportation has been

provided by D.S.'s parents. D.S.'s mother, his geneticist, and his dietician provided the school with instructions on how to manage and treat D.S.'s condition. Dr. Narumanchi, D.S.'s geneticist, further recommended the Defendant provide D.S. with an aide.

As a result of D.S.'s health issues, D.S.'s parents requested he be tested for special education eligibility. The school declined to test D.S. prior to his beginning kindergarten. However, in first grade, D.S. was tested by the school psychologist who, along with the Eligibility Committee, determined that D.S. was ineligible for special education services. Instead, the Defendant proposed a Section 504 Plan.

Unsatisfied with this solution, D.S.'s mother requested an Independent Educational Evaluation ("IEE"). After receiving the request, the Defendant provided D.S.'s mother with its criteria for evaluations and a list of pre-approved evaluators. D.S.'s mother chose Dr. Margaret Kay, who was not on the Defendant's list, as the evaluator. While Dr. Kay determined that D.S. was eligible for special education services, she reviewed only one of the eight special education evaluation criteria. Furthermore, Dr. Kay did not confer with D.S.'s teachers, nor did she observe D.S. in the educational setting. Nevertheless, Dr. Kay found that D.S. has a learning disability in reading for which he should qualify for special education services in addition to being eligible as Other Health Impaired ("OHI") due to his MCADD and ADHD diagnoses.

Following Dr. Kay's evaluation, D.S.'s mother requested that D.S. be provided with an Individualized Education Program ("IEP"). That request was denied because the Eligibility Committee found that D.S. did not qualify as OHI or for a specific learning disability. In light of the denial, D.S.'s mother filed for a due process hearing. In that hearing, D.S.'s mother argued that the Defendant must: (1) identify D.S. as eligible for

special education services; (2) provide him with an appropriate IEP; (3) provide an aide; (4) provide appropriate placement and transportation or reimburse for transportation; (5) pay the balance of $2,400 for Dr. Kay's evaluation; and (6) pay D.S.'s parents' attorney fees.

The IHO's findings are the subject of this lawsuit. Both parties filed motions for summary judgment [ECF Nos. 13, 15] requesting that the IHO's determinations be affirmed in part and reversed in part. Additionally, D.S.'s parents request that the Court hear additional evidence and reimburse them for the reasonable attorney fees, costs, and expenses incurred in bringing this action. ECF No. 13 at 2.

## II. MOTION FOR ADDITIONAL EVIDENCE

Before the Court decides the parties' motions for summary judgment, the Plaintiffs seek to present additional evidence to inform the Court of D.S.'s current educational program and his continued need for an aide and for specialized instruction in reading. ECF No. 13 at 24. The Plaintiffs argue that this additional evidence will assist the Court in making its determinations on the motions for summary judgment.

### A. Applicable Legal Standard

Pursuant to 20 U.S.C. § 1415, a court hearing an IDEA appeal "shall receive the records of the administrative proceedings [and] . . . hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C). The Fourth Circuit has defined "additional evidence" to mean "supplemental evidence." <u>Springer v. Fairfax County Sch. Bd.</u>, 134 F.3d 659, 667 (4th Cir.1998). The Fourth Circuit stated:

> We construe "additional" in the ordinary sense of the word . . . to mean supplemental. Thus construed, this clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of "additional." We

> are fortified in this interpretation because it structurally assists in giving
> due weight to the administrative proceeding, as Rowley requires.

Id. (quoting Town of Burlington v. Dept. of Educ., 736 F.2d 773, 790 (1st Cir. 1984) (citations and footnote omitted). The Springer court further held "[a] lax interpretation of 'additional evidence' would 'reduce the proceedings before the state agency to a mere dress rehearsal by allowing appellants to transform the [IDEA]'s judicial review mechanism into an unrestricted trial de novo.'" Springer, 134 F.3d at 667 (quoting Roland M. v. Concord Sch. Comm., 910 F.2d 983, 997 (1st Cir. 1990)). "Therefore, the exclusion of testimony from all who did, or could have, testified before the administrative hearing would be an appropriate limit in many cases." Springer, 134 F.3d at 667 (citing Burlington, 736 F.2d at 790) (internal citations omitted).

When additional evidence relates to events that occurred after the administrative hearing, the Court should consider the evidence but may "treat[] such evidence cautiously . . . [because] [i]t is inevitable that additional information will become available after an administrative hearing." Schaffer ex rel. Schaffer v. Weast, 554 F.3d 470, 476 (4th Cir. 2009). "Assigning dispositive weight to evidence that arises only after the administrative hearing" would frustrate the purposes of the IDEA. Id. at 475-77.

**B. Analysis**

Here, the Plaintiffs seek to present Plaintiff Christinea Stotler's affidavit as additional evidence. ECF No. 13 at 25. While the affidavit contains some information that could have been presented at the administrative hearing, the affidavit also contains information regarding "ongoing violations." These allegations concern events that have occurred since the hearing took place. In so far as the affidavit narrates acts that occurred after the December 19, 2017 and December 20, 2017 hearing, the Court will

consider the evidence in relation to the parties' motions for summary judgment.  See Schaffer ex rel. Schaffer v. Weast, 554 F.3d 470 (2009).  Nevertheless, the Court will treat such evidence "cautiously" so as to "protect the role of the administrative hearing" under the IDEA.  Id. at 476.

### C. Conclusion

For the aforementioned reasons, the Court **ORDERS** that the Plaintiffs' Motion for Additional Evidence [ECF No. 13] is **GRANTED IN PART**.  The Court will consider the evidence submitted in so far as it relates to events that occurred after the administrative hearing.

## III. MOTION FOR SUMMARY JUDGMENT

Next, the parties filed opposing motions for summary judgment seeking to affirm in part and reverse in part the IHO's decisions.  ECF Nos. 13, 15.

### A.  Standard of Review

"When a district court reviews a state administrative decision under the IDEA, that court must make an 'independent decision based on a preponderance of the evidence,'" affording the administrative findings "due weight."  AW ex rel. Wilson v. Fairfax Cty. Sch. Bd., 372 F.3d 674, 678 (4th Cir. 2004) (citing Doyle v. Arlington Cty. Sch. Bd., 953 F.2d 100, 103 (4th Cir. 1991), Springer v. Fairfax Cty. Sch. Bd., 134 F.3d 659, 663 (4th Cir. 1998)).  Due weight requires that "findings of fact by hearing officers be considered *prima facie* correct."  Doyle, 953 F.2d at 105; see also Cty. Sch. Bd. V. Z.P. ex rel. R.P., 399 F.3d 298, 304 (4th Cir. 2005) (holding that "state administrative proceedings are entitled to a presumption of correctness").  If a district court declines to adopt the hearing officer's findings of fact, it is "required to explain why it does not." Id.

**B. Analysis**

In their motion for summary judgment, the Plaintiffs request that the Court reverse the IHO's finding that D.S. does not qualify for a personal aide and that D.S. does not require specially designed instruction in reading. The Plaintiffs request that the Court affirm the IHO's findings that: (1) the Defendant violated multiple provisions of the IDEA and WV Policy 2419 by failing to timely and comprehensively evaluate D.S.; (2) the Defendant violated multiple provisions of the IDEA, WV Policy 2419 and WV Policy 4363 by failing to provide appropriate transportation or payment in lieu of transportation; and (3) the Defendant is required to reimburse the Plaintiffs for the remainder of the IEE, even if failure to reimburse was not a violation of the IDEA. ECF No. 13 at 9.

The Defendant moves to dismiss all IDEA claims against it because the IHO did not find that any violation of the IDEA led to a denial of a free and appropriate public education. Additionally, the Defendant requests that the Court: (1) reverse the IHO's determination that D.S. is eligible for special education services; (2) affirm the IHO's determination that the Defendant did not violate the IDEA by refusing to reimburse the Plaintiffs for Dr. Kay's evaluation; (3) reverse the IHO's finding that the Defendant violated the IDEA by failing to provide transportation; and (4) affirm the IHO's determination that D.S. does not require a one-to-one aide. ECF No. 16 at 8, 10, 14, 16, and 17. These issues will be addressed in turn.

**1. Dismissal of Allegations Against the BOE**

First, the Defendant requests that the Court dismiss all alleged IDEA violations against it. ECF No. 16 at 5. In support, the Defendant argues that to constitute a

violation of the IDEA, the IHO must have found that the IDEA violation resulted in a failure to provide a free and appropriate education ("FAPE").  ECF No. 16 at 8.  Because the IHO did not find that alleged IDEA violations resulted in a failure to provide a FAPE, the Defendant argues that all IDEA violations must be dismissed.

### a.  IHO's Decision

In this case, the IHO found that the Defendant violated the IDEA in evaluating and transporting D.S.  With respect to evaluation, the IHO found that the Defendant violated the IDEA by "refusing to evaluate [D.S.] starting on May 31, 2016" and by "substituting a § 504 Plan" for an IEP.  ECF No. 12 at 76.  The IHO further found that the Defendant violated the IDEA by failing to "ensure the evaluation was sufficiently comprehensive."  Id.  With respect to transportation, the IHO found that the Defendant violated the IDEA by "failing to provide appropriate transportation to the student to and from school or in the alternative, to provide payment in lieu of transportation."  Id. at 77.

### b. Applicable Law

In Gadsby by Gadsby v. Grasmick, the Fourth Circuit held that "failure to comply with IDEA's procedural requirements . . . can be a sufficient basis for holding that a government entity has failed to provide a free and appropriate education."  109 F.3d 940, 956 (4th Cir. 1997).  However, the Fourth Circuit opined that "to the extent that the procedural violations did not actually interfere with the provision of a free appropriate public education, these violations are not sufficient to support a finding that an agency failed to provide a free appropriate public education."  Id.

### c. Analysis

Here, the IHO does not specifically state that the violations of the IDEA interfered with D.S.'s ability to receive a free and appropriate public education. However, the IDEA violations acknowledged above are not merely procedural in nature. This is not a case like <u>Gadsby</u> in which the defendant violated a notice provision of the IDEA. In this case, the violations were such that D.S. was initially denied an evaluation, then denied a comprehensive evaluation, eliminating his ability to receive an IEP altogether. Furthermore, without the Plaintiffs transporting D.S. to school, he would not have received an education at all. Without adequate reimbursement for that transportation, D.S. certainly was not receiving a free public education. These violations are not merely procedural, and even if the IHO did not explicitly state that the violations denied D.S. a FAPE, the Court hereby finds that the Defendant's violations of the IDEA did in fact interfere with D.S.'s ability to receive a free and appropriate public education.

### d. Conclusion

For these reasons, the Court affirms the IHO's decision that the Defendant violated the IDEA. Accordingly, the Defendant's motion for summary judgment with respect to dismissal of all violations of the IDEA is **DENIED**.

### 2. D.S.'s Eligibility for Special Education Services

Next, the Defendant requests that the Court reverse the IHO's finding that the Defendant failed to timely and comprehensively evaluate D.S. and identify him as eligible for special education services. ECF No. 16 at 5. In support, the BOE argues that the evidence shows that D.S. was not in need of special education services in

kindergarten, and that D.S. was timely and adequately evaluated before the beginning of his first-grade year.  ECF No. 16 at 11-14.

### a. IHO's Decision

In finding that the BOE failed to timely evaluate D.S. and identify him as eligible for special education services, the IHO held that "[w]hen a student is suspected of needing special education and related services, WV Policy 2419 gives the school system eighty (80) days to gather information to determine whether the student has a disability, what the educational needs of the student are[,] . . . the effects of the disability on educational and functional performance, whether the student needs specially designed instruction and the nature and extent of the special education needed by the student."  ECF No. 12 at 65.  The IHO further found "it is undisputed that the parents suspected and asked for an IEP" before D.S. entered kindergarten, but that the BOE did not evaluate him until approximately one year later.  Id.  Thus, the IHO found that the BOE failed to timely evaluate D.S.  When D.S. was ultimately evaluated, the IHO found that the BOE had "multiple evaluations to help them make their decision and their decision [that D.S. did not qualify for an IEP] seems inconsistent with the evidence."  ECF No. 12 at 69.  Based upon these findings of fact and conclusions of law, the IHO found that the BOE violated "multiple provisions of the IDEA and [West Virginia] Policy 2419" by refusing to evaluate D.S. starting on May 31, 2016, and failing to adequately evaluate D.S. over a year later.  ECF No. 12 at 75-76.

### b. Applicable Law

Under the IDEA, the term "child with a disability" means a child "with intellectual disabilities, hearing impairments (including deafness), speech or language impairments,

visual impairments (including blindness), serious emotional disturbance[,] . . . orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities . . . who, by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(A). For children ages 3 through 9, like D.S., the term "child with a disability" may include children experiencing developmental delays. 20 U.S.C. § 1401(3)(B). A child with a disability must be evaluated in accordance with the regulations prescribed under the IDEA. 20 U.S.C. § 1414(a)(1)(A).

Under West Virginia Policy 2419, when there is suspicion that a student may be eligible for special education services, within eighty days, the school system must gather information to determine: (1) whether the student has a disability; (2) what the educational needs of the student are, including his present levels of academic achievement and his related developmental needs; (3) the effects of the disability on educational and functional performance; (4) whether the student needs specially designed instruction; and (5) the nature and extent of the special education needed by the student. W.V.D.E. Policy 2419, Procedural Safeguards, Ch. 3, § 2A.

### c. Analysis

In this case, the IHO found that "[t]he undisputed testimony from the parent is that the student was refused testing prior to kindergarten for special education and related services." ECF No. 12 at 64. Based on this refusal, the IHO found that the Defendant did not timely evaluate D.S. While the statement that the Plaintiffs requested and were "refused testing" might be misleading,[1] the Court finds that there is sufficient evidence in the record to support the IHO's finding that D.S. should have been tested for special education services before entering kindergarten.

---

[1] It appears that the Plaintiffs' first formal request for an evaluation occurred on May 17, 2017.

The record shows that, prior to D.S.'s entrance to kindergarten, the Plaintiffs shared information regarding D.S.'s medical diagnoses and early education records. These records included information about D.S.'s early intervention services, MCADD diagnoses, Disruptive Behavior Disorder diagnoses, Attention Deficit Hyperactivity Disorder diagnoses and Oppositional Defiant Disorder diagnoses. Under West Virginia Policy 2419, school districts are tasked with "locat[ing], identify[ing], and evaluat[ing] students with disabilities." W.V.D.E. Policy 2419, <u>Procedural Safeguards</u>, Ch. 2 § 1. Therefore, these medical, educational and psychological records should have triggered a special education evaluation even if the Plaintiffs did not explicitly request one. Once the obligation to evaluate D.S. arose, pursuant to WV Policy 2419, the Defendant had eighty days to gather information and make a determination on D.S.'s needs. However, the Defendant did not begin the evaluation process until after D.S.'s kindergarten year, well beyond the eighty days allowed by WV Policy. Therefore, this Court affirms the IHO's finding that the Defendant failed to timely evaluate D.S.

Next, the IHO found that when D.S. was ultimately evaluated, the Defendant's decision regarding D.S.'s eligibility for special education services was "inconsistent with the evidence." ECF No. 12 at 69. Upon review of the evidence, as summarized by the IHO in pages 30 through 33 of her decision, the Court does not find any basis to reverse the IHO's determination that the Defendant incorrectly determined that D.S. was not eligible for special education services prior to starting first grade. Tellingly, the Defendant did ultimately conclude that D.S. is eligible for special education services only six months later, and one month after the hearing was held. <u>See</u> ECF No. 12 at

39.  Accordingly, the Court will not now second-guess the IHO's decision that D.S. was, and remains, eligible for special education services.

### d. Conclusion

For the aforementioned reasons, the IHO's decision with respect to D.S.'s evaluation and eligibility for special education services is affirmed.  Accordingly, the Defendant's motion for summary judgment with respect to this issue is **DENIED**.

### 3. Reimbursement for Dr. Kay's Evaluation

Next, the Defendant requests that the Court affirm the IHO's finding that the Defendant did not violate the IDEA by refusing to reimburse the Plaintiffs for Dr. Kay's evaluation.  ECF No. 16 at 4.  In support, the Defendant argues that it followed the proper procedures and timelines for handling an IEE request.  ECF No. 16 at 15. Although the Plaintiffs do not explicitly address this issue in their Motion for Summary Judgment, in their reply, the Plaintiffs argue that the IHO ordered the Defendant to reimburse the remainder of the evaluation costs.  ECF No. 17 at 4.

### a. IHO's Decision

The IHO found that Defendant "did not violate IDEA and/or WV Policy 2419 by failing to fully reimburse the [Plaintiffs] for [Dr. Kay's evaluation]."  ECF No. 12 at 71. Nevertheless, the IHO found that the Plaintiffs "were able to demonstrate by sufficient evidence that the [Defendant] failed to appropriately and timely evaluate [D.S.] for special education and related services," and therefore, the IHO ordered that the Defendant "reimburse the [Plaintiffs] for the remainder of the cost paid by them to [Dr. Kay]."  Id. at 78.  The IHO made it clear that the remedy is not a result of the

Defendant's "fail[ure] to follow WV Policy 2419 or their own county [evaluation] policies." Id.

### b. Analysis

In this case, the parties' requested relief can coexist—and does coexist under the IHO's decision. The Defendant does not request that the Court reverse the IHO's directive to reimburse Dr. Kay's evaluation costs in their entirety. The Plaintiff does not ask the Court to reverse the IHO's finding that the Defendant did not violate the IDEA or West Virginia Policy 2419 by failing to fully reimburse the Plaintiffs. Accordingly, the Court will not reverse the IHO's decision with respect to the evaluation costs.

### c. Conclusion

For these reasons, the Court affirms the IHO's finding that the Defendant did not violate the IDEA or WV Policy 2419 by failing to fully reimburse the Plaintiffs for Dr. Kay's evaluation. Accordingly, the Defendant's motion for summary judgment with respect to reimbursement for Dr. Kay's evaluation is **GRANTED**.

Nevertheless, the Defendant is **DIRECTED** to fully reimburse the Plaintiffs for Dr. Kay's evaluation pursuant to the IHO's directive on pages 42 and 43 of her decision, for the reasons provided therein.

### 4. Reimbursement for Transportation

The Defendant requests that the Court reverse the IHO's finding that the Defendant violated the IDEA by failing to provide adequate transportation for D.S. ECF No. 16 at 16. In support, the Defendant argues that it never denied bus transportation to D.S. The Defendant further argues that it was not required to provide transportation

options aside from the school bus because D.S. was not eligible for special education services at the relevant time.  ECF No. 16 at 23.

### a. IHO's Decision

The IHO found that the Defendant violated the IDEA with respect to D.S.'s transportation to and from school because the transportation offered by the Defendant was inadequate and, in the alternative, the payment offered to reimburse the Plaintiffs for driving D.S. was arbitrary and insufficient.  ECF No. 12 at 71-72.  Specifically, the IHO found first that the special education bus offered to transport D.S. was inadequate because the amount of time on the bus would "greatly exceed[] the recommended time on a school bus for elementary school students."  Id. at 72.  Then, the IHO found that the Defendant's payment in lieu of transportation alternative was insufficient because the Defendant only offered the Plaintiffs $0.14 per mile, which is the IRS rate for service of charitable organizations.  Id.  The IHO determined that the Defendant should have offered the IRS business rate, which is approximately $0.55 per mile.  Id.  Based on this finding, the IHO ordered the Defendant to pay the payments in lieu of transportation for the 2016-17 school year and such part of 2017-18 that the parents continue to provide transportation.  ECF No. 12 at 78.  The IHO ordered that the cost be calculated by using the IRS business travel rate.  Id.

### b. Applicable Law

Pursuant to West Virginia Policy 4336, all students living more than two miles from their assigned school are eligible for school transportation services.  W.V.D.E. Policy 4336, School Bus Transportation Policy and Procedures Manual, § 3.4.  Students with IEPs, individualized health plans, and § 504 plans are entitled to "special

transportation," which is defined as "modifications made in regular school transportation to assure accessibility of special education and other related services for students with disabilities." W.V.D.E. Policy 2419, <u>Procedural Safeguards</u>, Glossary. In lieu of special transportation, county school districts can make payments to parents so that the parents can transport their own child.

The standard for the duration of transportation for elementary students is thirty (30) minutes, one way, WV ST § 18-2E-5d (2019). Where transportation reimbursement is appropriate, federal courts have calculated IDEA mileage reimbursement using the IRS standard business mileage rate at the time the mileage expenses were incurred. <u>B.P. v. Charlotte-Mecklenburg Bd. Of Educ.</u>, No. 06-445, 2010 WL 1418334, at *2 (W.D.N.C. Apr. 2, 2010) ("The Court agrees with CMS that the mileage reimbursement should be calculated using the mileage rate in effect at the time that the mileage expenses were incurred.")

### c. Analysis

On November 20, 2017, the Defendant offered D.S. a modified transportation plan on a special education bus. ECF No. 12 at 71. The plan provided that D.S. would be picked up at 6:09 a.m. and delivered to school at 7:30 a.m.; a bus ride 81 minutes long. <u>Id.</u> In the afternoon, D.S. would be picked up from school at 2:42 p.m. and arrive home at 4:20 p.m.; a bus ride 98 minutes long. <u>Id.</u> In total, the plan would result in D.S. spending a total of 179 minutes per day on the bus—about two hours more than the state standard. Because D.S.'s transportation plan results in total bus time far exceeding the statewide thirty (30) minute standard, the plan is inappropriate. WV ST § 18-2E-5d (2019).

Alternatively, the Defendant offered to make payment in lieu of transportation. On November 30, 2017, the Defendant offered D.S.'s parents eight ($8.00) dollars per day for two (2) round trips at fifty-six (56) miles.  Id.  The Defendant did not explain how it arrived at that figure until the Due Process hearing.  Id.  At the Due Process hearing, the Defendant specified that the reimbursement rate was equivalent to the "standard mileage fees at the IRS rate." Id.  The IRS rate the Defendant appeared to be using was that of "miles driven in service of charitable organizations."  Id.  Though there is little guidance from the Fourth Circuit regarding the proper IRS rate to use, other circuits have determined that the business rate is proper.  See Ruby v. Jefferson Cty. Bd. of Educ., 122 F. Supp. 3d 1288 (N.D. Ala. 2015) (utilizing the IRS's 2013 standard business mileage rate for reimbursement); S.L. ex rel. Loof v. Upland Unified Sch. Dist., 747 F.3d 1155, 1160 (9th Cir. 2014) (same).  Therefore, the amount the Defendant pays the Plaintiffs to reimburse for transportation costs is far less than the amount which it should be paying.

Accordingly, from a review of the evidence, it appears that the Defendant did not offer an appropriate transportation plan for D.S.   The Defendant's modified transportation plan was inadequate, and the offered payment in lieu of transportation was insufficient.

### d. Conclusion

Therefore, the Court affirms the IHO's finding that the Defendant violated the IDEA and West Virginia Policy 2419 by failing to provide appropriate transportation or adequate payment in lieu of transportation.   Accordingly, Defendant's motion for summary judgment with respect to this issue is **DENIED**.

### 5. D.S.'s Eligibility for One-to-One Aide

The Plaintiffs request that the Court reverse the IHO's finding that D.S. does not qualify for a personal aide. In support, D.S.'s parents argue that an aide is required for D.S. to be able to participate in services equal to that afforded others, i.e., a full instructional day. ECF No. 13 at 19. Conversely, the Defendant requests that the Court affirm the IHO's finding that D.S. does not qualify for a personal aide. In support, the Defendant argues that there is insufficient evidence that the lack of a one-to-one aide adversely affects D.S.'s educational performance, and that D.S. lost any educational opportunities as a result.

### a. IHO's Decision

In finding that the Defendant did not violate the IDEA by not providing D.S. with a one-to-one aide, the IHO held that "[a]lthough the student could have benefitted from an aide[,] . . . there was insufficient evidence to demonstrate that he required a one-on-one aide to benefit from his first grade education." ECF No. 12 at 75. Evidence presented at the hearing reflects that the BOE has consistently provided aides that work with D.S. ECF No. 12 at 44. The IHO further found that "it should be the decision of [the IEP team] as to whether the student receives a one-on-one aide going forward." ECF No. 12 at 75. Based upon these findings of fact and conclusions of law, the IHO found that the Defendant did not violate the IDEA and/or West Virginia Policy 2419 by failing to provide D.S. with a one-to-one aide. ECF No. 12 at 77.

### b. Applicable Law

The Supreme Court has held that, to satisfy the free and appropriate public education requirement, "a school must offer an IEP reasonably calculated to enable a

child to make progress appropriate in light of the child's circumstances." Endrew F. v. Douglas Co. Sch. Sist. R-1, 137 S. Ct. 988, 999 (2017). The Supreme Court continued to say that, although children with disabilities may not always attain grade-level advancement, the IDEA "demands more" than "*de minimis* progress from year to year." Id.

Although the case law on D.S.'s specific disabilities, and therefore, accommodations required under IDEA is limited, there is some guiding precedent. In Cedar Rapids Community School District v. Garret F., the Supreme Court found that a one-on-one aide was appropriate for a quadriplegic, ventilator-dependent student. 526 U.S. 66 (1999). In so holding, the Supreme Court stated that the IDEA is intended to "enable a disabled child to remain in school during the day" so to provide the student with "meaningful access to education." Id. at 73.

### c. Analysis

Here, the IHO found that, although D.S. could have benefitted from a one-to-one aide, there was not sufficient evidence to show that one was required. ECF No. 12 at 39. The Plaintiffs argue that, like in Garret, without a one-on-one aide, "D.S.'s access to public school is not meaningful" because "he spends a minimum of 40 minutes a day out of the classroom just for blood sugar checks." ECF No. 13 at 17. However, D.S.'s circumstances are distinguishable from the child in Garret. In Garret, the child would not have been able to attend school at all without an aide.

Moreover, an IEP must only be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." The evidence presented indicates that D.S. is making significantly more than *de minimis* progress, even in the

absence of an aide.  For example, D.S.'s kindergarten teacher testified that she found that D.S. was meeting the standards of the West Virginia Department of Education.  It further appears that D.S. does not require an aid for medical reasons because D.S. attends a school with a full-time nurse.  ECF No. 12 at 43.  In Kindergarten, D.S.'s teacher and classroom aide were both able to identify when D.S. was experiencing problems with his blood sugar.  Therefore, so long as educational staff is appropriately trained, a one-on-one aide should not be necessary for monitoring and identifying signs of low blood sugar.

Finally, the Court emphasizes that, "[a]ny review of an IEP [by the Court] must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal."  Endrew, 137 S. Ct. at 999.  Because there are staff members who can provide for D.S. medically and there were no known adverse effects on his education due to the absence of an aide,  the Court will not substitute its judgement for that of the IHO and IEP team.

### d. Conclusion

Therefore, the Court affirms the IHO's determination that the Defendant did not violate the IDEA or West Virginia Policy 2419 by failing to provide a one-on-one aide. Accordingly, with respect to this issue, the Plaintiffs' motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**.

### 6. D.S.'s Eligibility for Specially Designed Instruction in Reading

Finally, the Plaintiffs move the Court to reverse the IHO's finding that D.S. does not require specially designed instruction in reading.  The IHO declined to address this

issue because "[t]his issue was not listed on the due process request nor was there any motion to amend the complaint before or during the hearing to add the issue."

### a. Applicable Law

A school provides a FAPE by developing an IEP for each disabled child. 137 S. Ct. at 999 (2017). IEPs "must contain statements concerning a disabled child's level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress." MM ex rel. DM v. School Dist., 303 F.3d 523, 526-27 (4th Cir. 2002); see 20 U.S.C. § 1414(d)(1)(A) (2019). An IEP is sufficient if it is "reasonably calculated to enable the child to receive educational benefits." Board of Educ. v. Rowley, 458 U.S. 207, 102 S. Ct. 3034 (1982).

### b. Analysis

In her decision, the IHO did not address the issue of whether D.S. has a specific learning disability in reading. ECF No. 12. One month after the hearing, but before the IHO issued her decision, the Defendant implemented an IEP that did not list the D.S. as Learning Disabled in reading, as suspected by the Plaintiffs and Dr. Kay. ECF No. 13 at 16. While Dr. Kay found that D.S. has a reading disability, initially, the school psychologist rejected Dr. Kay's finding because D.S. had not yet been exposed to first grade curricula. Id. After beginning first grade, the school recognized that D.S. required assistance in reading. Id. As a result, the Defendant placed D.S. in Title I reading, a program where D.S. receives additional reading instruction in a small group. There is a lack of evidence with respect to whether the Title I reading program has improved D.S.'s reading abilities.

Accordingly, at this point, the Court declines to substitute its judgment for that of D.S.'s educators and IEP team. See Springer, 134 F.3d at 666 (holding that "courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy"). The IDEA "recognizes that children change over time," and "affirmatively requires school districts to create and analyze new information." Schaffer, 554 F.3d at 476. Therefore, this issue is best addressed with D.S.'s IEP team where all parties can analyze any new information presented by D.S.'s participation in Title I reading.

### c. Conclusion

For these reasons, the IHO's absence of a finding that D.S. qualifies for special instruction in reading is affirmed. Accordingly, the Plaintiffs' motion for summary judgment with respect to specially designed instruction in reading is **DENIED**.

### C. Conclusion

For the aforementioned reasons, the Court **ORDERS** that the Motions for Summary Judgment [ECF Nos. 13, 15] be **GRANTED IN PART** and **DENIED IN PART**. The Court further **ORDERS** that the IHO's decision be **AFFIRMED.**

### IV. MOTION FOR COSTS AND ATTORNEY FEES

Finally, Plaintiffs filed a motion for costs and attorney fees. ECF No. 13.

### A. Applicable Legal Standard

Under Federal Rule of Civil Procedure 54(d), costs, other than attorney's fees, should be awarded to the prevailing party after judgment. The IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs (I) to a prevailing party who is the parent of a child with a disability . . . " 20 U.S.C. § 1415(i)(3)

(2019). A prevailing party is one who receives "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992). A party is "prevailing" where it can "point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989). If attorney's fees are awarded, those fees may be reduced if the prevailing party has unreasonably protracted the final resolution of the controversy. 20 U.S.C. § 1415(i)(3)(F)-(G).

### B. Analysis

Here, the Plaintiffs are not technically the prevailing party because the legal relationship between the parties did not change as a result of the due process hearing nor the appeal. At the time the IHO's decision was entered, the Defendant had already found that D.S. was eligible for special education services, which is the root of issues in the instant case. However, the Defendant designated D.S. as eligible for special education services after the due process hearing. At that point, the Plaintiffs' attorney had already expended a significant number of hours on this case. Nevertheless, because the Plaintiffs did not prevail on appeal, the Court finds that the appropriate amount of attorney's fees are those to compensate the Plaintiffs' attorney up until the Plaintiffs' appeal of the due process decision.

### C. Conclusion

Accordingly, the Plaintiffs' Motion for Attorney Fees [ECF No. 13] is **GRANTED IN PART**. The Court will award attorney's fees for the hours worked by Plaintiffs'

counsel up until the appeal was filed. Plaintiffs' counsel is **DIRECTED** to file a separate motion for attorney's fees addressing the amount and reasonableness of those fees.

## V. Conclusion

For the reasons provided herein, the Plaintiffs' Motion for Summary Judgment, Additional Evidence, and Attorney Fees is **GRANTED IN PART** and **DENIED IN PART**. The Defendant's Motion for Summary Judgment [ECF No. 15] is **GRANTED IN PART** and **DENIED IN PART**. The IHO's decision is **AFFIRMED**. Plaintiffs' counsel is **DIRECTED** to file a separate motion addressing the amount and reasonableness of any attorney's fees sought on or before **July 2, 2019**. Defense counsel is directed to file any response to the motion on or before **July 9, 2019**.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** June 18, 2019

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE